**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-CV-23858-BLOOM/OTAZO-REYES**

**PATAGONIA, INC.,**

Plaintiff/Counter-Defendant,

v.

**WORN OUT, LLC**,

Defendant/Counter-Plaintiff.

_____/

**PATAGONIA'S COMBINED MOTION TO DISMISS AND MOTION TO STRIKE**
**AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................1

II.    FACTS AND PLEADINGS ..........................................................................1

III.   DISMISSAL OF WORN OUT'S FRAUD COUNTERCLAIM WITHOUT
LEAVE  TO AMEND ...................................................................................5

      A.      Standard of Review......................................................................5

      B.      Summary of Worn Out's Improperly Pled Fraud Claim ..................7

      C.      Worn Out's Allegations of Fraud as to Patagonia's Earliest Uses of
WORN WEAR  Are Unsupported and Implausible ...........................8

      D.      Worn Out's Allegations of Fraud as to Patagonia's Renewal of Its
WORN WEAR  Registrations are Unsupported and Based on
Speculation and Unreasonable  Inferences ....................................12

      E.      Worn Out's Fraud Claim Should Be Dismissed Without Leave to
Amend.........................................................................................14

IV.   WORN OUT'S REQUESTS FOR DAMAGES AND PRE AND POST-
JUDGMENT  INTEREST ..........................................................................15

      A.      Standard of Review....................................................................16

      B.      Worn Out's Requests for Damages and Interest Should Be Stricken as
Immaterial  and Impertinent........................................................16

V.     CONCLUSION.........................................................................................17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) ..................................................................... 5
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 5
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 5
*Blake v. Batmasian*,
  318 F.R.D. 698 (S.D. Fla. 2017) ................................................................. 16
*Church Girls, LLC v. Rodgers*,
  2018 WL 5923436 (S.D. Fla. Nov. 13, 2018) ......................................... 6, 15
*Doe v. Carnival Corp.*,
  470 F. Supp. 3d 1317 (S.D. Fla. 2020) ....................................................... 16
*Drew Est. Holding Co., LLC v. Fantasia Distribution, Inc.*,
  2012 WL 234105 (S.D. Fla. Jan. 24, 2012) .............................................. 8, 12
*Future Media Architects, Inc. v. IdeaStream Consumer Prod.*, LLC,
  2009 WL 10667040 (S.D. Fla. Jan. 5, 2009) .......................................... 11, 15
*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) .................................................................. 6, 7
*In Re Int'l Christian Broad., Inc.*,
  2012 WL 1267949 (T.T.A.B., Mar. 29, 2012) ......................................... 10, 11
*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004) ....................................................................... 5
*Metro Traffic Control, Inc. v. Shadow Network, Inc.*,
  104 F.3d 336 (Fed. Cir. 1997) .................................................................. 6, 14
*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ..................................................................... 5
*Scott v. Experian Info. Sols., Inc.*,
  2018 WL 3360754 (S.D. Fla. June 29, 2018) ............................................... 5
*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ......................................................................... 5
*Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory
  of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem*,
  702 F.3d 1279 (11th Cir. 2012) ..................................................................... 6
*Space Base, Inc. v. Stadis Corp.*,
  17 U.S.P.Q. 2d 1216 (TTAB 1990)) (dismissing ....................................... 11
*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*,
  151 F. Supp. 3d 1268 (M.D. Fla. 2015) ....................................................... 6
*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ......................................................................... 5

Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................................5
Fed. R. Civ. P. 12(f)............................................................................................................16

Regulations

37 CFR 2.56....................................................................................................................10
TMEP § 904.03(g) ..........................................................................................................10

## I. INTRODUCTION

Defendant/Counter-Plaintiff Worn Out, LLC's ("Worn Out") first counterclaim seeks cancellation of two of Plaintiff/Counter-Defendant Patagonia, Inc.'s ("Patagonia") registrations for its well-known WORN WEAR trademark based on a theory that Patagonia made fraudulent statements to the Patent and Trademark Office ("PTO") in the course of securing and maintaining those registrations.

Worn Out's fraud counterclaim is inadequately pled. It improperly relies on "information and belief" for support. Otherwise Worn Out cites to (a) vague "internet research" conducted without providing details about the nature or results of that research, and (b) Patagonia's PTO submissions that contradict or undermine Worn Out's claim, rendering it implausible. Accordingly, Worn Out's first counterclaim should be dismissed with prejudice.

Without any basis or supporting factual allegations, Worn Out also includes in its prayer for relief requests for "punitive and exemplary damages in an amount to be determined" and "an award of pre and post-judgment interest." Worn Out requests this relief despite the fact that its counterclaims are confined to the inadequate and fatally flawed fraud theory described above, and a second claim that Patagonia has abandoned use of its WORN WEAR trademark for certain services – claims that, even if properly pled and proven, would only entitle Worn Out to partial cancellation of Patagonia's trademark registrations. Worn Out does not provide a basis for its request for damages or interest, and no basis exists for either. Accordingly, the Court should strike paragraphs D and F from the Prayer for Relief in Worn Out's Answer and Counterclaim.

## II. FACTS AND PLEADINGS

In October 2012, Patagonia launched its WORN WEAR brand in order to partner with its customers to extend the life of a wide range of PATAGONIA-brand products, aimed at environmental goals including a decrease in waste and landfill material caused by flawed, second quality or discarded apparel, footwear, accessories, and other outdoor gear. Patagonia opened its first WORN WEAR-

branded retail environment in the first week of October 2012.  (*See* Dkt. 1 ("Complaint"), ¶ 15.)  In fact, the photo of Patagonia's WORN WEAR retail environment embedded in its complaint was taken on October 5, 2012 in Portland, Oregon.  (*Id.*)

Since it started, Patagonia has expanded its WORN WEAR retail business and used its WORN WEAR brand to mark and sell an array of rescued, recycled, and repaired products, including products that its customers trade in or return, products that Patagonia repairs or disassembles and uses for parts to generate an entirely new product, and "seconds" or samples that Patagonia repairs or modifies such that they are suitable for use by customers.  (*Id.*)

On September 13, 2013, Patagonia applied to register its WORN WEAR logo in class 35, covering "retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories."  (*Id.* at ¶ 13.)  On September 9, 2015, Patagonia applied to register WORN WEAR as a word mark for the same services.  (*Id.*)  To support these applications, Patagonia provided the PTO with specimens showing examples of Patagonia's signage demarcating and promoting its WORN WEAR-branded, in-store retail environments.  (Request for Judicial Notice filed concurrently with this Motion ("RJN"), Exs. A and B.)  Patagonia renewed these registrations in October 2019 (for the WORN WEAR logo) and May 2021 (for the WORN WEAR word mark), again submitting signage specimens to the PTO showing its use of WORN WEAR to brand brick and mortar retail stores.  (RJN, Exs. C and D.)  Patagonia's applications and renewals were supported by declarations, signed by Robert Tadlock, the company's Associate General Counsel – Brand & Activism.  Patagonia also operates an online WORN WEAR branded retail store at  https://wornwear.patagonia.com.  (Complaint, ¶ 13.)  To govern the "trade-in" aspect of Patagonia's WORN WEAR retail business (which is only one part, separate from the company's offering of repaired, upcycled or restored seconds or samples), Patagonia also has maintained a policy informing customers of the type of products that Patagonia will accept second-hand. (Dkt. 23 ("Answer & Counterclaim"), ¶ 35.)

In February 2021, Defendant Worn Out applied to register its WORN OUT brand as a word mark and logo, covering apparel products in class 25, and retail store services for apparel in class 35. Shortly after it applied, it began selling products under WORN OUT. (Answer & Counterclaim, ¶ 19.)

After Patagonia objected to Worn Out's application to register WORN OUT and its use of the mark, in September 2022, Worn Out filed "expungement" petitions at the PTO against Patagonia's class 35 registrations for WORN WEAR, alleging that Patagonia has never used its WORN WEAR mark as a brand for retail services offering "footwear" and "outdoor accessories and gear." (RJN, Exs. E and F.) The PTO outright rejected Worn Out's expungement petitions as to outdoor accessories and gear, but asked Patagonia to provide evidence of use of WORN WEAR as a retail services brand for "vintage and used footwear" as of the date of Worn Out's petitions, i.e., September 28, 2022. (RJN, Exs. G and H) (limiting the PTO's request to evidence of use of the marks to sell footwear). Patagonia filed its responses on January 27, 2023, providing the PTO with multiple examples of footwear products sold through its WORN WEAR online retail store. (RJN, Exs. I and J.) Notwithstanding Patagonia's evidence of use of WORN WEAR for the entire range of retail services for which the mark is registered, based on its future plans, Patagonia voluntarily deleted the term "footwear" from its registrations. (*Id.*)

After the PTO rejected Worn Out's theory that Patagonia had failed to use WORN OUT for outdoor accessories and gear, and after Patagonia had supplied to Worn Out – through its pleading in this case and its response to Worn Out's PTO expungement petition – evidence (a) of Patagonia's use of WORN OUT to brand apparel and gear retail environments since October 2012, and (b) evidence of Patagonia's use of WORN OUT as a retail service mark for apparel, footwear, and gear, Worn Out continued its groundless attack by filing fraud counterclaims targeting the WORN WEAR registrations. (Answer & Counterclaim, ¶¶ 22-42.)

Ignoring the PTO's rejection of Worn Out's theory with respect to "outdoor accessories and gear" (and ample public evidence to the contrary),, Worn Out doubles down on its claim that Patagonia

committed fraud by declaring that it has used WORN WEAR to sell "outdoor gear and accessories" since 2012. (Answer & Counterclaim, ¶ 30.) Refusing to acknowledge evidence to the contrary, Worn Out claims that Patagonia committed fraud by declaring that it has used WORN WEAR to sell "footwear" as well. (*Id.*)

Equally troubling, Worn Out claims (on "information and belief") that Patagonia committed fraud by claiming that it was using WORN WEAR as a retail services brand when Patagonia applied for registrations covering the mark in 2013 and 2015. (Answer & Counterclaim, ¶ 28.) Worn Out is pursuing this theory despite the fact that Patagonia provided evidence of use dating back to October 2012 through embedded images and specific dates included in Patagonia's pleading (Complaint, ¶ 15 (the Complaint was filed on November 23, 2022)), and separately in meet and confer with metadata associated with Patagonia's photo. (RJN, Ex. K.)

Worn Out's only detailed allegation related to the specious fraud claim actually contradicts any "fraud." Worn Out points to Patagonia's trade-in policy, which Worn Out admits that Patagonia *provided to the PTO in connection with its renewal of its WORN WEAR registration*. (Answer & Counterclaim, ¶ 35.) Although the trade-in policy embedded, quoted, and linked in Worn Out's pleading (*id.,* ¶¶ 31-35) clearly states that it governs only the type of products that Patagonia *accepts* as returns (i.e., not what Patagonia sells), Worn Out repeatedly mischaracterizes the policy, first as a limit on the type of services that Patagonia "provide[s]" (*id.*, ¶ 31), then as a "represent[ation] that [Patagonia] does not provide services with respect to footwear and outdoor gear and accessories" (*id.*, ¶ 34).

Worn Out's Answer & Counterclaim also seeks "punitive and exemplary damages in an amount to be determined" and "an award of pre and post-judgment interest," though the company provides no basis for those prayers, statutory or otherwise. (*Id.*, Prayer for Relief, ¶¶ D and F.)

### III. DISMISSAL OF WORN OUT'S FRAUD COUNTERCLAIM WITHOUT LEAVE TO AMEND

#### A. Standard of Review

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.,* 729 F.3d 953, 959 (9th Cir. 2013). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

At the motion to dismiss stage, unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir. 2005). In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *see also Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (a court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," nor conclusory allegations or unreasonable inferences). A pleading that offers "labels and conclusion" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Fraud claims are held to a higher standard. In addition to the usual notice pleading standard under Rule 8, Rule 9(b) requires that allegations of fraud state "with particularity the circumstances constituting the fraud." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008). Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth, and do not satisfy the particularity requirements under Rule 9(b). *See Scott v. Experian Info. Sols., Inc.,*

2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

Worn Out's claims that Patagonia's WORN WEAR registrations should be partially or entirely cancelled based on fraudulent procurement and/or maintenance. It is well established that "[a] party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. Indeed, 'the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.'" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal citation omitted); *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem*, 702 F.3d 1279, 1289 (11th Cir. 2012) (same).

"Fraud in obtaining a trademark occurs 'when an applicant knowingly makes false, material representations of fact in connection with an application' or in a verified declaration." *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1277 (M.D. Fla. 2015) (quoting *Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)). Such a claim has five elements: "(1) The challenged statement was a false representation regarding a material fact. (2) The person making the representation knew that the representation was false ('scienter'). (3) An intent to deceive the USPTO. (4) Reasonable reliance on the misrepresentation. (5) Damage proximately resulting from such reliance." *Church Girls, LLC v. Rodgers*, No. 2:18-CV-14232, 2018 WL 5923436, at *2 (S.D. Fla. Nov. 13, 2018).

To prove fraud, the party seeking cancellation must demonstrate that the registrant had "a purpose or intent to deceive the PTO in the application for the mark." *Sovereign Military Hospitaller*, 702 F.3d at 1289 (citing *In re Bose Corp.*, 580 F.3d at 1243,1245). The party seeking cancellation of the

mark must demonstrate that the registrant had the subjective intent to defraud the PTO: "[T]here is a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.  In other words, deception must be willful to constitute fraud." *In re Bose Corp.*, 580 F.3d at 1243.

### B.  Summary of Worn Out's Improperly Pled Fraud Claim

Worn Out levies this serious charge against Patagonia's registrations for its WORN WEAR retail services mark (in word mark and logo form).  As best as the allegations can be understood, Worn Out claims that (a) Patagonia misstated the date on which it began offering and selling apparel at retail under the WORN WEAR trademark (Answer & Counterclaim, ¶¶ 24-27), and that Patagonia was not using WORN WEAR for retail services when it applied for registrations for the mark in 2013 and 2015 (*id.*, ¶¶ 27-28); and (b) Patagonia misled the PTO about whether it was using WORN WEAR as a retail service mark for footwear and outdoor gear and accessories when the company renewed its trademark registrations in 2019 and 2021 (*id.*, ¶¶ 28-38).[1]

Worn Out's pleading fails in that it relies on "information and belief," conclusory or contradictory statements, and mischaracterizations of facts or their import.  Even if Worn Out were to provide more detail, its theory would remain implausible and therefore fails to state a claim that supports the relief it seeks.

---

[1] Worn Out's second counterclaim for Abandonment similarly targets Patagonia's consistent use of WORN WEAR as a retail service mark for footwear and outdoor gear and accessories.  (Answer & Counterclaim, ¶¶ 43-45.)  While Patagonia has given the benefit of the doubt to the second counterclaim, despite issues with the plausibility of its pleading, the fraud claim fails and cannot be rescued by amendment.

**C.** **Worn Out's Allegations of Fraud as to Patagonia's Earliest Uses of WORN WEAR Are Unsupported and Implausible**

In its attacks on Patagonia's 2012 first use date, and on Patagonia's use of WORN WEAR as of the dates of its initial applications (2013 and 2015), Worn Out relies solely on "information and belief" or vague "internet research" that is directly contradicted by publicly available material that even Worn Out acknowledges in its own pleading.

Worn Out begins by alleging, "on information and belief," that Patagonia was not using its WORN WEAR marks by October 7, 2012, Patagonia's claimed first use date. Fraud claims cannot be based on allegations made solely "on information and belief." *See, e.g., Drew Est. Holding Co., LLC v. Fantasia Distribution, Inc*., No. 11-21900-CIV, 2012 WL 234105, at *7 (S.D. Fla. Jan. 24, 2012).

In the next breath, Worn Out refers to unspecified "internet research" and "internet searches" that it believes are relevant to the nature and timing of Patagonia's trademark use. (Answer & Counterclaim, ¶¶ 24-27.) It alleges that "internet research" revealed no use in October 2012, and that its "internet searches on Google.com and the Wayback Machine . . . do not reveal any use of the Worn Wear Marks as of the date of submission of the statements of use for both applications for the Worn Wear Marks," i.e., September 13, 2013 and September 9, 2015. (Answer & Counterclaim, ¶¶ 24-27); (*see* RJN, Exs. A and B).

Worn Out's attempt to backstop its "information and belief" research and searches does not improve its position, because (a) Worn Out's own pleading contradicts the purported "internet research"; (b) Worn Out's allegations are implausible in light of Patagonia's evidence of use in its own pleading and in public records; and (c) Worn Out's "internet searches" are not described with adequate particularly in any case and are not probative of what occurred in brick and mortar stores.

Worn Out contradicts its purported research by admitting that Patagonia's "specimens submitted

[to the PTO] . . . contain images of in-store displays."[2]  (Answer & Counterclaim, ¶ 26.)  As Worn Out

acknowledges, each of the photo specimens that Patagonia has submitted to the PTO to support its

WORN WEAR registrations – both at the application phase and at the renewal phase – shows use of the

mark on point-of-sale displays for the very range of products covered by the registrations.  These

specimen images are attached to Patagonia's Request for Judicial Notice and shown in the table below.

| Reg. No. 4955520; Initial Specimen (submitted Sept. 9, 2015); (RJN, Ex. B). | Reg. No. 4623527; Initial Specimen (submitted Sept. 13, 2013); (RJN, Ex. A). |
|---|---|
|  |  |

---

[2] Worn Out's reliance on "internet searches" and "internet research" likely ignores that Patagonia, since launching its Worn Wear business, has run part of its retail operation through brick and mortar stores. (*See* RJN Exs. A-D, I-M.)  Patagonia's registrations do not specify retail services *over the internet*, and Worn Out's internet-specific allegations cannot plausibly support a fraud claim.  Patagonia also has operated an online WORN WEAR business for many years.

| Reg. No. 4955520; Renewal Specimen (submitted May 10, 2021); (RJN, Ex. D). | Reg. No. 4623527; Renewal Specimen (submitted Oct. 24, 2019); (RJN, Ex. C). |
|---|---|
|  |  |

Courts and the Trademark Trial and Appeal Board hold that such "in-store display" and point of sale signage constitutes use of a trademark for retail services. *See, e.g., In Re Int'l Christian Broad., Inc.*, 2012 WL 1267949, at *5 (T.T.A.B., Mar. 29, 2012) (holding that "the specimen shows the mark actually being used as part of the rendering of the service, i.e., next to the goods being offered for sale," based on the principle that "point-of-sale displays, such as shelf-talkers, can be used as specimens for the sale of goods, as displays associated with the goods") (citing 37 CFR ("Trademark Rule") 2.56; TMEP § 904.03(g)).

Accordingly, the very "in-store displays" that Worn Out acknowledges in its pleading (Answer & Counterclaim, ¶¶ 26 and 35) demonstrate that Patagonia was using the WORN WEAR mark to brand its used and vintage retail environments when Patagonia applied and renewed its mark, contrary to Worn

Out's allegations based on its internet research and searches.[3]

Worn Out's allegation that its "internet research" did not reveal use by Patagonia of WORN WEAR for retail services as of the first use date in 2012 is also implausible. First, the conclusory allegation is implausible in the face of Patagonia's pleading, which again includes an example of the "images of in-store displays" for the Worn Wear retail environment that Worn Out acknowledges elsewhere, dated October 5, 2012. (Complaint, ¶ 15.) The allegation is also undermined by the fact that – if Worn Out actually had searched the internet for evidence of Patagonia's longstanding use of WORN WEAR as a retail mark dating back to 2012 – it would have located the press releases attached to Patagonia's Notice of Reliance (or other similar announcements), which reference Patagonia's launch of WORN WEAR branded retail services in October 2012 (RJN Ex. L) or, in June 2013, explain "We've had a tremendous response to our pilot program launched in Portland last fall, so we're thrilled to be expanding the Worn Wear program into more stores" (RJN Ex. M). These press releases underscore the implausibility of Worn Out's allegations about Patagonia's use of its WORN WEAR mark for retail services.

A fraud claim cannot be sustained by the accuser's purported inability, through "searches," to find uncontroverted evidence demonstrating the *truth* of the challenged statements. Worn Out's

---

[3] Even if Worn Out wanted to try to plead around the clear reasoning and holdings in *In Re Int'l Christian Broad.* and similar cases – that Patagonia's "in-store displays" somehow *"do not* show use of the Worn Wear Marks in connection with any services" (*id.*, ¶ 26), the fact that Patagonia submitted these photos to the PTO and the fact that the PTO examined those photos and determined they were valid evidence of use, precludes Worn Out's claim. Even a patently false misstatement to the PTO cannot rise to the level of fraud where the PTO is given access to the information underlying the statement. *See, e.g., Future Media Architects, Inc. v. IdeaStream Consumer Prod.,* LLC, No. 08-60496-CIV, 2009 WL 10667040, at *2 (S.D. Fla. Jan. 5, 2009) (citing *Space Base, Inc. v. Stadis Corp.,* 17 U.S.P.Q. 2d 1216 (TTAB 1990)) (dismissing fraud claims where the PTO was already aware or presumably aware of the information underlying the purported misstatement, and emphasizing that dismissal is all the more appropriate where the party accused of fraud provided such information to the PTO itself).

11

allegation that it conducted research is insufficient to support the attacks on Patagonia's registrations and the evidence, already in Worn Out's hands, reveals the inability to cure this pleading failure.

**D.      Worn Out's Allegations of Fraud as to Patagonia's Renewal of Its WORN WEAR Registrations are Unsupported and Based on Speculation and Unreasonable Inferences**

Worn Out next alleges that, at some point in time before Patagonia renewed its registrations for the WORN WEAR retail services mark, Patagonia ceased using the mark to offer and sell "footwear and outdoor gear and accessories." (Answer & Counterclaim, ¶¶ 30-33.) It claims that the renewals, therefore, amount to fraud.

Worn Out again centers this version of its fraud claim "on information and belief." (*Id*., ¶¶ 30 and 32.) As set forth above, the basis is wholly inadequate to support a fraud claim. *Drew Est. Holding Co*., 2012 WL 234105, at *7.

Worn Out also repeats its reliance on "internet research" to backstop its information and belief. (Answer & Counterclaim, ¶ 30.) In this case, Worn Out's entire theory that Patagonia has failed to offer footwear or outdoor gear and accessories through its WORN WEAR-brand retail operation is premised on unreasonable inferences drawn by Worn Out from Patagonia's Worn Wear Trade-in Policy.

Worn Out speculates that, if Patagonia will not accept a customer's return of a used pair of shoes or a used hat, scarf, or pair of socks, Patagonia *must not* be able to sell those products under its WORN WEAR retail brand. (*Id.*, ¶¶ 31-35.) Worn Out's faulty logic continues, as it speculates that Patagonia's Associate General Counsel, aware of the policy governing the *used products Patagonia accepts as trade-ins*, intended to deceive the PTO when he signed the renewal affidavits in 2019 and 2022 and submitted the policy to the PTO. (*Id.*, ¶¶ 37-38.)

Worn Out's own pleading and the public records available to it prior to its decision to file its misguided fraud claim again undermine or contradict its argument. Worn Out acknowledges that the policy on which Patagonia relies is a Trade-in Policy, not, e.g., a "Sales Policy" or any other document

that might limit or dictate what it does or does not sell under the WORN WEAR mark. The policy –

quoted and embedded in Worn Out's counterclaim – begins with "What Do and Don't We *Accept*." (*Id.*,

¶¶ 35-36) (emphasis added). Despite Worn Out's mischaracterizations (e.g., in paragraph 34, Worn Out

says that the Trade-in Policy "represent[s] that [Patagonia] does not provide" certain services), on its

face the policy merely governs what used products Patagonia will accept from the public in exchange for

store credit. It does not dictate or limit what products Patagonia offers at retail under its WORN WEAR

brand.[4]

Contrary to Worn Out's assumptions, Patagonia's Worn Wear business sources apparel, gear,

and accessories from several channels. For example, the Worn Wear brand offers repaired "seconds"

and samples that Patagonia generated in its design process. The Worn Wear website includes a section

devoted to "seconds." (RJN, Exs. N and O.) The product listings indexed there explain that "Factory

Seconds are products that arrive at our warehouse with some slight defects. They are still fully

functional, so Worn Wear sells Factory Seconds to give these garments a life despite their

imperfections." (*Id.*) (The Court need not take judicial notice of the truth of these promotional

materials or explanations of Patagonia's sourcing channels; we point to them merely to show that the

illogic and implausibility of Worn Out's inference about the import of Patagonia's Trade-in Policy was

publicly available.)

Turning to the products themselves, with respect to "outdoor gear and accessories" (the language

used in Patagonia's services identification in its registrations), Worn Out's fraud claim is again based on

faulty logic and unreasonable inferences. Even if it were true that Patagonia both refused to accept

certain accessories as trade-in items (i.e., "hats, scarves, beanies, gloves, socks"), and refused to sell

---

[4] Worn Out's counterclaims seek to cancel registrations covering retail store services, not, e.g., repair, recycling or upcycling services.

those specific items, Patagonia nevertheless could operate a thriving retail business under the WORN WEAR brand selling <u>other</u> types of "outdoor gear and accessories."  In fact it has done so, offering and selling products ranging from sleeping bags to backpacks to hiking packs (these are separate from the duffels and other products that constitute "luggage").  (RJN, Ex. P.)  At bottom, even if Worn Out had never visited https://wornwear.patagonia.com/shop/packs-and-gear or reviewed the print-out of the page that Patagonia provided in meet and confer, the allegation that a limitation in Patagonia's Trade-in Policy against accepting used "hats" somehow could support a claim that Patagonia defrauded the PTO by renewing registrations for "outdoor gear and accessories" is at best implausible.

With respect to "footwear," no later than January 27, 2023, the week before Worn Out filed its counterclaim, Worn Out had access to evidence of Patagonia's sale of various footwear products in the form of examples of "sold" listings for those products that Patagonia submitted to the PTO as part of its response to Worn Out's parallel request to delete "footwear" from Patagonia's registration through an expungement proceeding.  (RJN, Exs. I and J.)  Patagonia over the years has sold footwear, including Synchilla® booties and booties in connection with its wader collection, under the WORN WEAR retail banner.

### E.  Worn Out's Fraud Claim Should Be Dismissed Without Leave to Amend

Worn Out's faulty logic, mischaracterizations, and blind eye to publicly available evidence (including evidence submitted in a PTO proceeding Worn Out initiated) cannot support its conclusory statement that Patagonia's Associate General Counsel intended to defraud the PTO when he signed declarations renewing the WORN WEAR registrations in 2019 and 2021.  Indeed, the parameters of the Trade-in Policy have no bearing on Mr. Tadlock's awareness of the extent of use of the WORN WEAR mark in connection with footwear and accessory retail services when he signed the Section 8 affidavits. Illustrating this issue, courts dismiss fraud claims when statements were more likely or overtly, facially incorrect.  *See, e.g., Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 340 (Fed. Cir.

14

1997) (holding that an "honest misunderstanding, inadvertence [or] negligent omission" may be false, but without demonstrating an "intent to deceive[,]" such false statements are not "fraudulent.").

Further, as with the specimen photos detailed above, Worn Out's own allegation that Patagonia submitted the Trade-in Policy to the PTO precludes Worn Out's fraud claim. (Answer & Counterclaim, ¶ 35.) Given that the PTO had access to the policy when it approved Patagonia's registration renewals, the PTO undoubtedly understood that the policy does not dictate the product line. Regardless of whether the PTO specifically recognized the disconnect, Patagonia's submission of the policy confirms that Patagonia had no intent to conceal the rules about used products its accepts, and no intent to deceive. *Future Media Architects, Inc.,* 2009 WL 10667040, at *2 (dismissing fraud claims where the PTO was already aware or presumably aware of the information underlying the purported misstatement).

## IV. WORN OUT'S REQUESTS FOR DAMAGES AND PRE AND POST-JUDGMENT INTEREST

As a result of its reliance on information and belief and contradicted and implausible allegations of non-use, with respect to Patagonia's earliest uses of WORN WEAR, Worn Out's counterclaim fails to adequately plead that (a) Patagonia made a false statement as to its October 2012 first use date, its use when it filed its applications in 2013 and 2015, or its use on footwear or outdoor gear and accessories when it renewed in 2019 and 2021; or (b) that anyone at Patagonia had the requisite knowledge or intent to defraud the PTO in the course of applying to register the WORN WEAR mark, or maintaining the resulting registrations.[5] As these are critical elements of the fraud claim, the failure warrants dismissal. Given the contradictions and implausibility of the claim, Worn Out should not be given leave to amend.

---

[5] Worn Out also falls short of the pleading requirements with respect to Patagonia's trademark applications in that it does not identify "the time and place of and persons responsible" for the allegedly false statements. *See Church Girls*, 2018 WL 5923436, at *2. In paragraph 28, Worn Out alleges that "representatives of Patagonia" made false statements in declarations supporting the company's trademark registration. This does not meet the standard.

**A.      Standard of Review**

Federal Rule of Civil Procedure 12(f) permits the Court to strike a pleading, including a counterclaim, if it is "insufficient ... redundant, immaterial, impertinent, or scandalous."  "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters."  *Blake v. Batmasian,* 318 F.R.D. 698, 700 (S.D. Fla. 2017) (Marra, J.).

**B.      Worn Out's Requests for Damages and Interest Should Be Stricken as Immaterial and Impertinent**

Worn Out's Prayer for Relief requests "[a]n award of punitive and exemplary damages in an amount to be determined" and "[a]n award of pre and post-judgment interests."  (Answer & Counterclaim, ¶¶ D and F.)  However, Worn Out does not provide any basis, statutory or otherwise, for its request for damages or interest.  Further, Worn Out has no affirmative claims that would support a claim for damages or related interest.  Worn Out asserts only two counterclaims – one alleging fraud and seeking cancellation of Patagonia's WORN WEAR registrations (*id.*, ¶¶ 39-42) and a second alleging that Patagonia partially abandoned its WORN WEAR trademark with respect to specific services (i.e., footwear and accessories and gear) and again seeking partial cancellation of Patagonia's WORN WEAR registrations (*id.*, ¶¶ 43-45).  Worn Out's Answer and Counterclaim also does not include any specific factual allegations describing damage suffered by Worn Out.  *Doe v. Carnival Corp.,* 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) ("A request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful or outrageous conduct.") (internal citations omitted). Accordingly, Worn Out's prayer for damages and interest is the type of impertinent material that should be stricken in order to expedite the case.  The Court should strike Prayer for Relief paragraphs D and F as immaterial and impertinent to the case and inappropriate as a matter of law.

## V.  CONCLUSION

Worn Out cannot be permitted to litigate serious allegations of fraud given the internal inconsistencies within its theory or the implausibility of its assumptions and conclusions.  If Worn Out's fraud theory is not dismissed, it signals that a vast number of trademark registrants may face specious challenges to their marks from litigants who choose to ignore publicly available evidence and disregard material submitted to the PTO.  Worn Out also should not be permitted to pursue damages without any legal or factual basis for such a request.  Patagonia accordingly respectfully requests that the Court dismiss Worn Out's first counterclaim for Fraud without leave to amend, and strike the damage-related requests from Worn Out's Prayer for Relief.

Dated February 22, 2023

Respectfully submitted,

/s/Jaime Rich Vining
David K. Friedland (FL Bar No. 833479)
Jaime Rich Vining (FL Bar No. 30932)
FRIEDLAND VINING, P.A.
9100 Dadeland Blvd., Suite 1620
Miami, Florida 33156
Tel: (305) 777-1720
Fax: (305) 456-4922

*Of Counsel*:

Gregory S. Gilchrist (*pro hac vice* to be filed)
Ryan Bricker (admitted *pro hac vice*)
Paymaneh Parhami (*pro hac vice* to be filed)
paymaneh.parhami@versolaw.com
VERSO LAW GROUP LLP
209 Kearny Street, 3rd Floor
San Francisco, California 94108
Tel: (415) 534-0495

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.3, undersigned counsel certifies that counsel for Patagonia has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised herein, and states the none of the issues has been resolved. Specifically, undersigned counsel explained the basis for Patagonia's Motion to Strike pre-filing correspondence dated February 12, 2023, and discussed that letter with Worn Out's counsel on February 16, 2023. Worn Out declined to withdraw or otherwise modify its pleading.

/s/*Ryan Bricker*
Ryan Bricker

## CERTIFICATE OF SERVICE

I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Ben Natter, Esq.
Michael Barer, Esq.
Haug Partners LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
Email: bnatter@haugpartners.com
Email: mbarer@haugpartners.com
*via CM/ECF*

Matthew Kevin Ryan, Esq.
Haug Partners LLP
1667 K St. NW
Washington, DC 20006
Email: mryan@haugpartners.com
*via CM/ECF*

/s/*Jaime Rich Vining*
Jaime Rich Vining