**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cv-23858-BLOOM/Otazo-Reyes**

PATAGONIA, INC.,

      Plaintiff,

v.

WORN OUT, LLC,

      Defendant.

_____/

**OMNIBUS ORDER ON REQUEST FOR JUDICIAL**
**NOTICE, MOTION TO DISMISS AND MOTION TO STRIKE**

     **THIS CAUSE** is before the Court upon Plaintiff Patagonia, Inc.'s ("Patagonia") Combined Motion to Dismiss and Motion to Strike Defendant Worn Out LLC's ("Worn Out") First Counterclaim, ECF No. [28] ("Motion"); and Patagonia's Request for Judicial Notice in Support of its Motion, ECF No. [29]. Worn Out filed a Response in Opposition, ECF No. [35], to which Patagonia filed a Reply, ECF No. [36]. The Court has carefully considered the Motion, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   BACKGROUND**

     Patagonia filed this action against Worn Out on November 23, 2022, alleging that Worn Out is infringing, misusing, and trading on Patagonia's WORN WEAR ® trademark. ECF No. [1] ¶ 2. Patagonia asserts the following claims for relief: Federal Trademark Infringement under 15 U.S.C. §§ 1114-1117 ("Complaint's First Claim"), Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a) ("Complaint's Second Claim"), Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) ("Complaint's Third Claim"), and

Common Law Infringement and Unfair Competition ("Complaint's Fourth Claim"). *Id.* at 27-49. Patagonia seeks declaratory and injunctive relief, including an order to prevent registration of Worn Out's trademark applications, an accounting of Defendant's assets that arise out of its allegedly infringing activities, and the imposition of a constructive trust. *Id.* at 15-17.

On February 1, 2023, Worn Out filed its Answer and Counterclaim, asserting several affirmative defenses and alleging that Patagonia committed fraud on the United States Patent and Trademark Office ("USPTO") in order to obtain and maintain its trademarks. Counterclaim ¶¶ 39-42, ECF No. [23]. Worn Out's Counterclaim specifically alleges that Patagonia, a large clothing designer and retailer, owns a "WORN WEAR" word mark with registration number 4,955,520, and a "WORN WEAR" logo with registration number 4,623,527, both for "[r]etail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories" (the "WORN WEAR Marks"). *Id.* ¶ 13. Patagonia claims October 7, 2012 as its first use date for its WORN WEAR Marks. *Id.* ¶ 23. Worn Out, an "affordable luxury street wear" company filed an application for a "WO WORN OUT" logo with serial number 90/590,855, and another application for a "WORN OUT" word mark with serial number 90/548,014 (the "WORN OUT Marks"). *Id.* ¶¶ 7, 9.

On May 24, 2022, Patagonia sent a cease-and-desist letter demanding that Worn Out "cease all use of its WORN OUT [M]arks and abandon its WORN OUT Applications." *Id.* ¶ 10. On or about August 17, 2022, Patagonia filed an opposition with the Trademark Trial and Appeal Board ("TTAB") to oppose Worn Out's registration of its WORN OUT Marks "on the basis of priority and likelihood of confusion with Patagonia's WORN WEAR [M]arks." *Id.* ¶ 12. On September 19, 2022, Worn Out filed a cancellation petition with the TTAB to cancel Patagonia's WORN

WEAR Marks. *Id.* ¶ 14. On November 23, 2022, Patagonia filed a trademark infringement complaint against Worn Out in this Court while its TTAB action was pending. *Id.* ¶ 21.

As of October 7, 2012, the first use date that Patagonia provided to the USPTO, Patagonia had not used the WORN WEAR Marks in connection with "[r]etail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories." *See id.* ¶¶ 13, 24. Specimens that Patagonia submitted to the USPTO did not contain "any actual evidence of the Worn Wear Marks in use commerce [sic] in connection with the listed services," *id.* ¶ 25. Worn Out's internet searches did not "reveal any use of the Worn Wear Marks as of the dates of submission of the statements of use for both applications for the Worn Wear Marks," *id.* ¶ 27.

On September 13, 2013, and September 9, 2015, "representatives for Patagonia" executed declarations in support of the application for the WORN WEAR Marks, stating that Patagonia was using the WORN WEAR Marks in commerce for the listed services, despite knowing that the WORN WEAR Marks were not actually being used in connection with the listed services. *Id.* ¶¶ 28, 34, 37. On October 24, 2019, Patagonia Assistant General Counsel Robert Tadlock submitted a false declaration of continued use for the same services. *Id.* ¶¶ 34, 35, 37. The "representatives for Patagonia" and Tadlock made these false statements to intentionally induce the USPTO to issue registrations for the WORN WEAR Marks and afterwards to maintain the registrations, both of which the USPTO did. *Id.* ¶¶ 29, 37-38.

Based on those allegations, Worn Out claims that Patagonia fraudulently obtained and maintained its WORN WEAR Marks by intentionally making "material false statements in its applications for the Worn Wear Marks and subsequent declarations of continued use, attesting that the Worn Wear Marks were in use with all of the listed services of the Worn Wear Registrations when they were not." *Id.* ¶¶ 39-42 ("Counterclaim's First Claim"). In addition, Worn Out asserts

Abandonment ("Counterclaim's Second Claim"). *Id.* ¶¶ 43-45. Worn Out asks this Court to cancel Patagonia's WORN WEAR Marks on the basis of fraud and abandonment, *id.* ¶ A, and requests an award of punitive damages, *id.* ¶ D, together with an award of pre- and post-judgment interest, *id.* ¶ F.

Patagonia requests this Court to take judicial notice of sixteen exhibits, moves to dismiss the Counterclaim's First Claim for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), and moves to strike paragraphs D and F from Worn Out's Counterclaim under Federal Rule of Civil Procedure 12(f). ECF No. [28] at 5.

## II.  LEGAL STANDARDS

### A.  Judicial Notice

Under Federal Rule of Evidence 201(b), "[a] district court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1224-25 (11th Cir. 2017) (footnotes omitted) (quoting Fed. R. Evid. 201(b)). Accordingly, the Eleventh Circuit has provided examples of the kinds of facts that courts may ordinarily judicially notice: "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

"A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing Fed. R. Evid. 201(f)). "While a court has wide discretion to take judicial notice of

facts, the 'taking of judicial notice of facts is, as a matter of evidence law, a highly limited process.'" *Id.* (quoting *Shahar*, 120 F.3d at 214) (citing Fed. R. Evid. 201(c)). "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Shahar*, 120 F.3d at 214.

> In order for a fact to be judicially noticed under Rule 201(b),

> indisputability is a prerequisite. 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5104 at 485 (1977 & Supp. 1994). Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing. *Id.* If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. *Id.* at 256-57 (footnote omitted). Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury. *Id.* at 485. *Accord United States v. Aluminum Co. of America*, 148 F.2d 416, 446 (2d Cir. 1945) (L. Hand, J.).

*United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Furthermore, as a court's authority to take judicial notice is limited to noticing adjudicative facts, "[a] court may thus refuse to take judicial notice of facts that are irrelevant to the proceeding." *Howe v. City of Enter.*, No. 15-cv-113-JA-SRW, 2018 WL 8545947, at *8 (M.D. Ala. Sept. 17, 2018) (quoting *Martincek v. LVNV Funding, LLC*, No. 16-cv-03587-ELR-JFK, 2017 WL 2903356, at *2 (N.D. Ga. Mar. 16, 2017)), *report and recommendation adopted*, No. 15-cv-113-ECM, 2019 WL 8723922 (M.D. Ala. Mar. 12, 2019); *see also United States v. Falcon*, 957 F. Supp. 1572, 1584-85 (S.D. Fla. 1997).

## B. Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud." *Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1374 (S.D. Fla. 2014) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1988)). The remaining elements of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

This heightened pleading standard "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks*, 116 F.3d at 1370-71 (quoting *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 2001)). "And while

courts must liberally construe and accept as true allegations of fact in a complaint, we 'need not accept factual claims,' 'which run counter to facts of which the court can take judicial notice.'" *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018), *report and recommendation adopted*, No. 17-61019-CIV, 2018 WL 8899004 (S.D. Fla. Nov. 15, 2018) (quoting *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998)).

### C. Motions to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation and citation omitted); *see also BB In Tech. Co. v. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (same); *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same); *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008) (same). Courts have broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f). *See, e.g.*, *Sakolsky v. Rubin Mem'l Chapel, LLC*, No. 07-80354-CIV, 2007 WL 3197530, at *2 (S.D. Fla. Oct. 26, 2007). Irrespective of the Court's broad discretion, this ability to strike is considered to be drastic, and is often disfavored. *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)); *Fabing v. Lakeland Reg'l Med. Ctr.*,

*Inc.*, No. 12-cv-2624-T-33MAP, 2013 WL 593842, at *2 n.2 (M.D. Fla. February 15, 2013) (calling Rule 12(f) a "draconian sanction").

### III. DISCUSSION

The Court first considers Patagonia's request for judicial notice, then whether Worn Out's claim is contradicted or precluded by any judicially noticed documents, and finally whether Worn Out's Counterclaim properly states a claim for relief. The Court then considers whether to strike paragraphs D and F from Worn Out's Counterclaim.

### A.  Judicial Notice

In support of its Motion, Patagonia requests this Court to take judicial notice of sixteen exhibits, labeled A-P. *See generally* ECF No. [29]. Exhibits A-D consist of Patagonia's specimens for its WORN WEAR Marks submitted to the USPTO, showing the WORN WEAR Marks displayed on in-store signs and pop-ups, and store windows. ECF No. [29-1] at 1-9. Exhibits E and F are expungement petitions filed by Intellectual Property Consulting, LLC with the USPTO against Patagonia's WORN WEAR Marks. *Id.* at 10-88. Exhibits G and H are the USPTO's Notices of Institution and Non-Final Office Action as to Patagonia's WORN WEAR Marks. *Id.* at 89-102. Exhibits I and J are Patagonia's responses to the USPTO office actions. *Id.* at 103-40. Exhibit K is an image of Patagonia's in-store WORN WEAR retail pop-ups, purportedly taken on October 5, 2012. *Id.* at 142. Exhibit L is a press release dated September 18, 2023, referencing Patagonia's launch of WORN WEAR-branded retail services in October 2012. *Id.* at 143-45. Exhibit M is another press release dated June 27, 2013, stating Patagonia's intent to expand the Worn Wear program to more stores. *Id.* at 146-48. Exhibits N-P are screenshots of the Worn Wear section of Patagonia's website, available at https://wornwear.patagonia.com, dated February 12,

2023. *Id.* at 149-61. Worn Out does not oppose judicial notice of Exhibits A-J but opposes judicial notice of Exhibits K-P. *See* ECF No. [35] at 19-21.

### i.   The Court Takes Judicial Notice of Exhibits A-J

Courts have found that "[t]he contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice." *Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *3 (S.D. Fla. Feb. 7, 2017) (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-13 (10th Cir. 2012)); *cf. Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999) ("We hold that a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice . . . of relevant public documents required to be filed with the SEC, and actually filed."). The contents of exhibits A-J are "'capable of accurate and ready determination' by resort to the USPTO website, whose accuracy cannot reasonably be questioned." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 18-CV-23357, 2019 WL 7945226, at *3 (S.D. Fla. Mar. 4, 2019). Furthermore, because Exhibits A-J are documents submitted to, or issued by the USPTO, which have become part of the public record, and are easily accessible via the USPTO website, they are judicially noticeable.[1] *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017) (taking judicial notice of the USPTO file history of a trademark).

Therefore, the Court will take judicial notice of the following facts shown by Exhibits A-J, specifically of the existence of (1) five images showing the WORN WEAR Marks on in-store signs and pop-ups, and store windows; (2) two expungement petitions filed by Intellectual Property Consulting, LLC containing statements alleging that Patagonia's WORN WEAR Marks have never been used in U.S. commerce in relation to "retail store services featuring vintage and used

---

[1] Specifically, the Court located Exhibits A-J with the USPTO's Trademark Status and Document Retrieval tool (TSDR), available at https://tsdr.uspto.gov.

footwear, outdoor gear and accessories;" (3) two notices from the USPTO to Patagonia informing Patagonia about the expungement petitions and requiring a response from Patagonia; and (4) two responses from Patagonia to the USPTO notices containing statements that Patagonia deleted "footwear" from its WORN WEAR registrations. *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) ("Judicial notice [of public records] may be taken only to establish what those documents contain, not the veracity of their contents.").

### ii. The Court Does Not Take Judicial Notice of Exhibit K

Patagonia argues that judicial notice of Exhibit K, an image of Patagonia's in-store WORN WEAR retail pop-ups purportedly taken on October 5, 2012, is appropriate. Patagonia contends that even though the photograph is not in the four corners of the Counterclaim, or attached thereto, Worn Out implicitly relies on it for its Counterclaim's First Claim and does not dispute its authenticity. ECF No. [36] at 11-12; *see also* ECF No. [29] at 4. Worn Out responds that it is inappropriate for the Court to take judicial notice of Exhibit K because Patagonia did not reference Exhibit K in its Counterclaim and an unauthenticated photograph like the one in Exhibit K is not within the Eleventh Circuit's categories of materials of which a court may take judicial notice. ECF No. [35] at 19-20.

Typically, in considering a motion to dismiss, a court's review is confined to the four corners of the pleading. *See Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1297 (S.D. Fla. 2022) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)). However, courts may judicially notice documents not attached to a pleading when (1) the party refers to the documents in the pleading, (2) the documents are central to the party's claim, and (3) their authenticity is not challenged. *See Taylor v. Bradshaw*, No. 11-80911-CIV, 2012 WL 12854870, at *5 (S.D. Fla. Sept. 21, 2012) (citing *Fetterhoff v. Liberty Life Assur. Co.*, 282 Fed. Appx. 740,

743 n.1 (11th Cir. 2008); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir.

1997)) (considering a motion to dismiss a Complaint).

Worn Out disputes the authenticity of the photograph in Exhibit K, *see* ECF No. [35] at

19-20, and the photograph is unauthenticated. *See* Fed. R. Evid. 901(a) ("[t]o satisfy the

requirement of authenticating or identifying an item of evidence, the proponent must produce

evidence sufficient to support a finding that the item is what the proponent claims it is."). Patagonia

has not provided the Court with this metadata, or with any other information to support that the

photograph in Exhibit K is evidence of use of the Mark dating back to October 2012. *See Eisenberg*

*v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1339 (S.D. Fla. 2014) ("Under Federal Rule of

Evidence 201(c)(2), the court 'must take judicial notice if a party requests it *and the court is*

*supplied with the necessary information*.'") (emphasis in original). Accordingly, the Court will not

take judicial notice of Exhibit K because its authenticity is disputed. *See Taylor v. Bradshaw*, No.

11-80911-CIV, 2012 WL 12854870, at *5 (S.D. Fla. Sept. 21, 2012) ("The unauthenticated

photographs submitted by Defendants do not fall within the categories recognized by the Eleventh

Circuit Court of Appeals as ones of which this Court can take judicial notice on a motion to

dismiss.").

### iii. The Court Takes Judicial Notice of Messages' Existence in Exhibits L and M

"It is within the scope of Federal Rule of Evidence 201 for a court to take judicial notice

of a press release, for the limited purpose of noting the existence of the press release's message."

*First Glob. Corp. v. Mansiana Ocean Residences, LLC*, No. 09-21092-CIV, 2010 WL 2163756,

at *3 n.3 (S.D. Fla. May 27, 2010) (citing *Shahar*, 120 F.3d at 214 n.5); *Osterback v. Scott*, No.

16CV105-MW/CAS, 2016 WL 11475136, at *2 (N.D. Fla. July 25, 2016), *report and*

*recommendation adopted in part*, No. 16CV105-MW/CAS, 2016 WL 4445255 (N.D. Fla. Aug.

18, 2016). The Court accordingly takes judicial notice that Exhibits L and M are press releases

containing statements indicating that Patagonia launched its Worn Wear program in October of 2012, and that Patagonia expanded its Worn Wear program to other stores. The Court does not accept these statements as true, but merely notes that they exist. *See Shahar*, 120 F.3d at 214 n.5 (noting the distinction between being "asked to know 'X'" and taking judicial notice of "the fact that a press release says 'X'").

### iv.  The Court Does Not Take Judicial Notice of Exhibits N-P

Patagonia argues that the Court may take judicial notice of Exhibits N-P because Patagonia provided Exhibits N-P to Worn Out in a meet and confer letter, and the Southern District of Florida "regularly takes judicial notice of non-governmental webpages." ECF No. [29] at 6; ECF No. [36] at 13. Worn Out responds that Exhibits N-P "cannot be independently authenticated on their face," and Patagonia relies on caselaw from outside the Southern District of Florida or regarding judicial notice of "government webpages for which there is a different standard." ECF No. [35] at 20.

Courts generally take judicial notice of the contents of government publications and website materials because they are not subject to reasonable dispute, and the contents can be readily determined from sources whose accuracy cannot reasonably be questioned. *Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n. 4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials."); *see also 7020 Entertainment, LLC v. Miami-Dade Cnty.*, 519 F. Supp. 3d 1094, 1098 (S.D. Fla. 2021) (taking judicial notice of state and county emergency and executive orders available from official government websites). However, the historical contents of a non-government website are proper subjects for judicial notice only if they contain information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, No. 20-CV-82296, 2022 WL 1978723, at *1 (S.D. Fla. June

5, 2022) (quoting *Setai*, 2017 WL 3503371, at *8); *see also Nassar v. Nassar*, No. 14-CV-1501-J-34MCR, 2017 WL 26859, at *5 (M.D. Fla. Jan. 3, 2017), *aff'd*, 708 Fed. App'x. 615 (11th Cir. 2017) ("In general, non-governmental websites are not proper subjects of judicial notice.").

In this case, Exhibits N-P are Patagonia's screenshots *of its own website*. ECF No. [29-1] at 149-61. Patagonia has not provided the Court with any information with which to authenticate the screenshots. *See Eisenberg*, 1 F. Supp. 3d at 1339. As a non-government website, the accuracy of the historical contents of Patagonia's website as shown by the screenshots are not beyond being reasonably questioned. *See Evofem*, 2022 WL 1978723, at *1 (noting that defendant must call a witness to authenticate a screenshot of its website). Furthermore, because the Court is considering a motion to dismiss, it confines its review to the four corners of Worn Out's Counterclaim. *See Yonan*, 591 F. Supp. 3d at 1297 ("Typically, in considering a motion to dismiss, a court's review is confined to the four corners of the complaint.").

Patagonia cites to *Tobinick v. Novella*, No. 14-CV-80781, 2015 WL 1526196, at *2 (S.D. Fla. Apr. 2, 2015), and *Capua v. Air Europa Lineas Aereas S.A. Inc.*, No. 20-CV-61438-RAR, 2021 WL 965500, at *2 (S.D. Fla. Mar. 15, 2021), for the proposition that the Southern District of Florida "regularly takes judicial notice of non-governmental webpages." ECF No. [36] at 13. However, *Tobinick* and *Capua* took judicial notice of the historical contents of webpages through the Internet Archive, which is a source whose accuracy some courts have concluded cannot be reasonably questioned,[2] and neither case was reviewing a motion to dismiss, where the court must stay within the four corners of the complaint or counterclaim. *See e.g., Capua*, 2021 WL 965500, at *1 n.4 ("[I]n considering a *motion to compel arbitration*, the court may consider matters outside

---

[2] *See, e.g., Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("[T]he Internet Archive has been found to be an acceptable source for the taking of the complaint."); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases finding that the Internet Archive and WayBack Machine are sources whose accuracy cannot reasonably be questioned).

of the four corners of the complaint." (emphasis added)); *Tobinick*, 2015 WL 152619, at *1 (considering a motion for temporary and preliminary injunctive relief).

Accordingly, the Court will not take judicial notice of Exhibits N-P.

**B.  Motion to Dismiss**

Having addressed Patagonia's request for judicial notice, the Court now considers whether Worn Out's Counterclaim states a claim upon which relief can be granted. As stated previously, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud." *Noveshen*, 47 F. Supp. 3d at 1374. The remaining elements of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "And while courts must liberally construe and accept as true allegations of fact in a complaint, we 'need not accept factual claims' 'which run counter to facts of which the court can take judicial notice.'" *Rubinstein*, 2018 WL 8899230, at *5.

The Counterclaim alleges fraud. The elements of fraud in trademark registration are as follows: "(1) '[t]he challenged statement was a *false* representation regarding a *material* fact[;] (2) [t]he person making the representation *knew* that the representation was false ("scienter")[;] (3) [a]n *intent to deceive* the USPTO[;] (4) Reasonable *reliance* on the misrepresentation[;] (5) [*d*]*amage* [to Worn Out] proximately resulting from such reliance.'" *Church Girls, LLC v. Rodgers*, No. 18-CV-14232, 2018 WL 5923436, at *2 (S.D. Fla. Nov. 13, 2018); *see also Sovereign Mil. Hospitaller v. Florida Priory of Knights Hospitallers*, 702 F.3d 1279, 1289 (11th Cir. 2012) ("An applicant commits fraud when he knowingly makes false, material representations

of fact in connection with an application for a registered mark." (internal quotation marks omitted)).

    **i.**       **The Court Will Not Apply the Fraud Pleading Standard Less Stringently**

Patagonia contends the Court should not apply the Rule 9(b) heightened pleading standard less stringently in this case, pointing out that Worn Out makes a number of allegations based on "information and belief," that such allegations are generally insufficient to adequately state a fraud claim under Federal Rule of Civil Procedure 9(b), and asserting that no circumstances of this case justify excusing Worn Out's doing so. ECF No. [28] at 12. Worn Out responds that courts apply the Rule 9(b) pleading standard less stringently to allow allegations based on "information and belief" when knowledge of the predicate facts is in the defendant's sole possession. ECF No. [35] at 17. In deciding the Motion, the Court must therefore determine whether it can accept as true allegations based on "information and belief."

The Eleventh Circuit has instructed that fraud claims "generally cannot be based on information and belief" because a plaintiff must plead "facts as to time, place, and substance of the defendants' alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). However, the Eleventh Circuit also recognized that the Rule 9(b) heightened pleading standard "may be applied less stringently . . . when specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control, . . . provided that [the plaintiff] accompan[ies] [her] legal theory with factual allegations that make [her] theoretically viable claim plausible." *Hill*, 2003 WL 22019936, at *3 (alterations in original and internal quotation marks omitted). When, as here, a court reviews a defendant's counterclaim as the counterclaimant, the court considers whether

specific factual information about the alleged fraud is peculiarly within the plaintiff's knowledge or control as the counter-defendant of the counterclaim. *See Onemata Corp. v. Rahman*, No. 20-CV-62002-WPD, 2021 WL 5175544, at *5 (S.D. Fla. Oct. 12, 2021) (noting that defendants/counterclaimants' fraudulent inducement claims were stated with sufficient particularity against plaintiffs as the counter-defendants); *see also Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-21411-CIV, 2012 WL 12863888, at *5-6 (S.D. Fla. Sept. 27, 2012) (declining to apply exception to Rule 9(b)'s prohibition on alleging fraud "on information and belief" to counterclaimaint's allegations against plaintiff/counter-defendant).

In this case, the allegations made against Patagonia "on information and belief" are not solely within Patagonia's knowledge and control because Worn Out has access to the predicate facts. Specifically, the allegedly false declarations Patagonia submitted to the USPTO are available in the USPTO's website. Counterclaim ¶¶ 28, 34, ECF No. [23]. Worn Out infers the falsehood of the declarations from the absence of the WORN WEAR Marks from its internet searches, *id.* ¶ 27, the USPTO reasonably relied on documents Patagonia submitted to the USPTO and became available in the USPTO website in order to register and maintain the WORN WEAR Marks, *id.* ¶¶ 25, 38, and information to establish damages to Worn Out is not solely within Patagonia's control, *id.* ¶¶ E-G. The remaining elements of knowledge and intent may be alleged generally. Fed. R. Civ. P. 9(b). Accordingly, the Court does not find it necessary to apply the Rule 9(b) pleading standard less stringently in this case because knowledge of the predicate facts is not solely in Patagonia's control, and Worn Out has access to all information necessary to allege fraud on the USPTO. *See Letzer v. Radiant Creations Grp., Inc.*, No. 16-14349-CIV, 2016 WL 7388357, at *3 (S.D. Fla. Dec. 19, 2016) ("When knowledge of the predicate facts would be in the defendant's sole possession, these requirements are relaxed to permit pleading on information and belief.").

The Court therefore does not accept as true any factual allegations based on "information and belief" that are pertinent to the Counterclaim's allegations of fraud in the instant Motion.

### ii.  The Judicially Noticed Documents Do Not Preclude Worn Out's Counterclaim

Patagonia argues that Worn Out's fraud Counterclaim is nevertheless implausible and precluded because Exhibits A-J show use of the WORN WEAR Marks in connection with "the range of products covered by the registrations," which contradicts the false material representation element of Worn Out's fraud allegations. ECF No. [28] at 12-13; ECF No. [36] at 5; *see also Rubinstein*, 2018 WL 8899230, at *5 ("[W]e 'need not accept factual claims' 'which run counter to facts of which the court can take judicial notice.'"). Worn Out argues that "Patagonia improperly attempts to attack the veracity of Worn Out's fraud claim by attempting to introduce evidence that the Worn Wear Marks were in use at the time the applications for the Worn Wear Registrations were filed." ECF No [35] at 11. When considering a 12(b)(6) motion to dismiss, "the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996).

For the following reasons, the Court concludes that the facts it has judicially noticed do not contradict those factual allegations in Worn Out's Counterclaim that are not legal conclusions. First, Exhibits A-D are images submitted as specimens to the USPTO in support of Patagonia's WORN WEAR Marks, showing the WORN WEAR Marks displayed on in-store signs and pop-ups, and store windows. ECF No. [29-1] at 1-9. Patagonia asserts that these images contradict Worn Out's claim because they show use in connection with the services in the registration. *See* ECF No. [28] at 14-15. Assuming *arguendo* that the images are evidence of such use, this would only contradict a legal conclusion made in Worn Out's Counterclaim, *see* 15 U.S.C. § 1127 ('[A]

mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . .), which the Court already does not take as true. *MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, 352 F. Supp. 3d 1234, 1237 (S.D. Fla. 2018) ("A court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. . . . This tenet, however, does not apply to legal conclusions."); *see also In re Brown & Portillo, Inc.*, 5 U.S.P.Q.2d 1381 (T.T.A.B. 1987) (considering whether a service mark printed on a menu constituted use in connection with services). Worn Out alleges that Patagonia falsely represented that it used the WORN WEAR Marks since October 7, 2012, Counterclaim ¶ 23, ECF No. [23]. The images do not contradict the allegations in Worn Out's Counterclaim as the images could only be evidence of use as of the date the images were submitted (September 13, 2013, and September 9, 2015), and Patagonia has provided the Court with no information to show the images were taken in October 2012.

Second, Exhibits E and F are expungement petitions filed by Intellectual Property Consulting, LLC with the USPTO against Patagonia's WORN WEAR Marks. ECF No. [29-1] at 10-88. The petitions allege that Patagonia's WORN WEAR Marks have never been used in U.S. commerce in relation to "retail store services featuring vintage and used footwear, outdoor gear and accessories." *See id.* at 11, 16, 50, 55. Those statements contained in the expungement petitions mirror Worn Out's argument that Patagonia's WORN WEAR Marks were not used in relation to footwear, outdoor gear and accessories, and thus plainly do not contradict the allegations in Worn Out's Counterclaim. *See generally* ECF Nos. [23, 35].

Third, Exhibits G and H are the USPTO's Notices of Institution of Proceedings (the expungement petitions) against Patagonia's WORN WEAR Marks, requiring Patagonia to respond in order to avoid cancellation of the WORN WEAR Marks as to the services upon which the

expungement proceedings were instituted. ECF No. [29-1] at 89-102. The Notices state that upon consideration of the expungement petitions, "the petition[s] and [their] accompanying evidence set forth a prima facie case that the mark was never in use in commerce with . . . [r]etail store services featuring vintage and used footwear." *Id.* at 91, 98. These Notices again mirror Worn Out's argument that Patagonia's WORN WEAR Marks were not used in relation to footwear, and therefore do not contradict the allegations in Worn Out's Counterclaim. *See generally* ECF Nos. [23] and [35].

Fourth, Exhibits I and J are Patagonia's response to the USPTO's Notices of Institution of Proceedings, where Patagonia deleted "footwear" from its registration. ECF No. [29-1] at 103-40. Patagonia wrote in its response that "[w]hile Registrant has sold used footwear, namely waders and booties, prior to the filing date of the petition to expunge, Registrant hereby deletes the services at issue in the proceeding." *Id.* at 106, 125. The fact in these responses that the Court may consider is solely that Patagonia deleted "footwear" from its registrations, and not whether Patagonia used its WORN WEAR Marks on its footwear products. *See Ubuy Holdings, Inc. v. Gladstone*, 340 F. Supp. 2d 1343, 1346 (S.D. Fla. 2004) ("[W]hen considering a motion to dismiss in a securities fraud case, [a court] may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed."). The fact that Patagonia deleted "footwear" from its registrations does not mean that Patagonia's original statements to the USPTO were a mistake, and not fraud. Accordingly, this fact does not contradict the allegations in Worn Out's Counterclaim. *See generally* ECF Nos. [23] and [35].

Finally, Exhibits L and M are press releases referencing the launch of WORN WEAR branded retail services in October 2012. ECF No. [29-1] at 144-48. The Court has taken judicial

notice only of the fact that these press releases exist, and not for the truth that Patagonia used its WORN WEAR Marks since October 2012. *First Glob. Corp.*, 2010 WL 2163756, at *3 n.3. Regardless, these press releases could only contradict an allegation that no information about the use of the WORN WEAR Marks is available on the internet, but Worn Out makes no such allegation. Instead, Worn Out alleges that its own internet searches did not reveal any use of the WORN WEAR Marks, not that no information is available whatsoever. Counterclaim ¶ 27, ECF No. [23].

After examining the judicially noticed documents, the Court does not find that they contradict or preclude Worn Out's Counterclaim.

### iii. *Future Media Architects* and Patagonia's Trade-in Policy Do Not Preclude Worn Out's Fraud Claim

Patagonia argues that it could not commit fraud on the USPTO given that it supplied its application materials to the USPTO, Worn Out infers fraud from the materials, and the USPTO was aware of the materials. ECF No. [36] at 10. Specifically, Patagonia relies on *Future Media Architects, Inc. v. IdeaStream Consumer Products, LLC*, No. 08-60496-CIV, 2009 WL 10667040 (S.D. Fla. Jan. 5, 2009) for the proposition that "a party cannot fraudulently mislead the [US]PTO while simultaneously supplying the [US]PTO with the information from which the alleged fraud is inferred." ECF No. [36] at 10. Worn-out responds that the Worn Wear trade-in policy Patagonia provided to the USPTO, Counterclaim ¶ 35, ECF No. [23], limits what Patagonia sells under the WORN WEAR Marks because the policy disallows customers from trading in certain items. *See* ECF No. [35] at 15.

First, in *Future Media Architects*, plaintiff sought cancellation of defendant's mark on the basis of fraud because the USPTO mistakenly issued a registration for defendant's mark for more uses than defendant declared in its Statement of Use. *Future Media Architects*, 2009 WL

10667040, at *2. The plaintiff attempted to correct the registration, but the USPTO issued the registration without the corrections regardless. *Id.* The *Future Media Architects* court noted that there could be no fraud on the USPTO for "failing to disclose information the Examining Attorney is already aware of or presumably aware of," especially when the plaintiff did provide the USPTO with the correct information. *Id.* (citing *Space Base Inc. v. Stadis Corp.*, 17 U.S.P.Q.2d 1216 (T.T.A.B. 1990)). However, the court dismissed plaintiff's fraud claim because the plaintiff "did not allege with any particularity what omissions [the defendant] might have made to maintain the registration, or when it should have made them." *Id.* Regardless, the facts in *Future Media Architects* are not applicable to this case, where Worn Out has alleged that Patagonia falsely represented to the USPTO that it used the WORN WEAR Marks for certain services when it in fact did not, and not that Patagonia withheld any information that the Examining Attorney was already aware of or presumably aware of. *See generally* Counterclaim, ECF No. [23]. Accordingly, *Future Media Architects* was concerned with fraud in the context of the USPTO granting a registration due to its own mistaken understanding of valid submitted materials, and not the USPTO granting a registration due to its reasonable reliance on misleading submitted materials. *Future Media Architects*, 2009 WL 10667040, at *2.

Second, courts must draw inferences in favor of the non-movant at the motion to dismiss stage, and the Court must therefore draw the inference that Patagonia's trade-in policy limits what it sells under the WORN WEAR Marks. *Am. Marine Tech*, 418 F. Supp. 3d at 1079; *see* ECF No. [35] at 15 ("Given that Patagonia itself characterizes its own Worn Wear system as a program to trade in and buy used clothing, if Patagonia's policies disallow trading in certain items then the logical inference is that those items cannot be purchased."). Patagonia claims that it sells repaired "factory seconds" which contradicts Worn Out's inference, but Patagonia cites in support only to

unauthenticated screenshots of its webpage which the Court did not judicially notice and cannot consider at this stage. *See* ECF No. [28] at 17.

Thus, *Future media Architects* does not bar Worn Out's Counterclaim.

### iv.  Worn Out Does Not State a Claim for Fraud

The Court now turns to address the sufficiency of Worn Out's allegations. Worn Out alleges based on "information and belief" that (1) the single shipment of Worn Out's goods sent to California was sent to Patagonia's own investigator, Counterclaim ¶ 20, ECF No. [23]; (2) Patagonia's WORN WEAR Mark was not used in connection with the listed services as of October 7, 2012, *id.* ¶ 24; (3) Patagonia has abandoned its WORN WEAR Mark with respect to footwear, outdoor gear, and accessories, and intends not to resume its use, *id.* ¶ 30; and (4) Patagonia has not used its WORN WEAR Mark in commerce within the past three years in connection with footwear and outdoor gear and accessories, *id.* ¶ 32. As the Court will not apply the Rule 9(b) pleading standard less stringently to allow it to take allegations based on "information and belief" as true, it must then consider whether Worn Out's Counterclaim, "shorn of these allegations," pleads a claim upon which relief can be granted. *Sream, Inc. v. Hookah Me Up, Inc.*, No. 18-CV-80937, 2019 WL 2269740, at *3 (S.D. Fla. Feb. 5, 2019).

The Counterclaim alleges the following remaining facts: Patagonia owns the WORN WEAR Marks (registration numbers 4,623,527 and 4,955,520) for retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories. Counterclaim ¶ 13, ECF No. [23]. Patagonia claims to have first used the WORN WEAR marks on October 7, 2012. *Id.* ¶ 23. Patagonia submitted specimens to the USPTO that only contain images of in-store displays. *Id.* ¶ 26. Worn Out's internet searches did not reveal any use of Patagonia's WORN WEAR marks as of the dates of submission of the statements of use for both applications for the WORN WEAR marks. *Id.* ¶ 27. On September 13, 2013, and September 9, 2015, "representatives

of Patagonia" falsely executed declarations to the USPTO stating that Patagonia was using the WORN WEAR marks in commerce in the United States, and in connection with footwear and outdoor gear and accessories. *Id.* ¶ 28. On October 24, 2019, Patagonia Assistant General Counsel Robert Tadlock submitted a false declaration that Patagonia continued to use the WORN WEAR Marks for the same services when it did not. *Id.* ¶¶ 34, 35, 37. Patagonia does not accept "swimwear, underwear, bras, PBL (Capilene and merino), embroidered items, shoes, wading boots, T-shirts, ski patrol jackets, accessories (hats, scarves, beanies, gloves, socks), waders, wetsuits, sleeping bags or Factory Seconds" as trade-ins. *Id.* ¶¶ 31, 35. Robert Tadlock and Patagonia representatives made their false statements with intent to induce the USPTO to maintain Patagonia's WORN WEAR registrations, and caused the USPTO to maintain them. *Id.* ¶ 38.

Worn Out's allegations fall short in that they do not specify who made the false statements in the September 13, 2013, and September 9, 2015 declarations, besides providing a general statement that it was "representatives of Patagonia," *see* Counterclaim ¶ 28, ECF No. [23], and only references Robert Tadlock as the individual responsible for the October 24, 2019 declaration of continued use. *See id.* ¶ 37. Worn Out also does not quote the exact false statements, besides alleging general descriptions of the "false declarations." *See id.* ¶¶ 28, 34. Furthermore, Worn Out does not allege when the declaration of continued use occurred for the WORN WEAR word mark (registration number 4,955,520), or who made it. *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1318 (S.D. Fla. 2013) ("the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." (citations omitted)). Accordingly, the Court finds that Worn Out's allegations do not satisfy Rule 9(b) and do not state a claim for fraud. *See Hookah Me Up*, 2019 WL 2269740, at *5 (denying dismissal where "[t]he Counterclaims identif[ied] the dates of

the allegedly false registration applications, who signed them, and what representations were made" and "alleged that trademark registrations were obtained as a result of these applications.").

### v.  The Court Grants Worn Out Leave to Amend its Fraud Counterclaim

Federal Rule of Civil Procedure 15 directs courts to grant leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'"). *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Patagonia has not provided a convincing reason to deny leave to amend. *See* ECF No. [28] at 18-19. The Court will therefore grant Worn Out leave to amend its fraud Counterclaim.

### C.  Motion to Strike

Patagonia also moves to strike Worn Out's claim for punitive damages and for pre- and post-judgment interest because Worn Out "does not provide any basis, statutory or otherwise, for its request for damages or interest," and because "Worn Out's Answer and Counterclaim . . . does not include any specific factual allegations describing damage suffered by Worn Out." ECF No. [28] at 20. Worn Out counters that "[a] general averment of damages is sufficient at the pleading stage," and that "Patagonia cites no case law whatsoever for the proposition that Worn Out's request for an award of pre[-] and post-judgment interest must be stricken." ECF No. [35] at 19. Additionally, Worn Out alleges a claim for fraud under the Lanham Act. *See* Counterclaim ¶ 1, ECF No. [23]. ("This is an action . . . pursuant to 15 U.S.C. § 1064 *et seq.* and 15 U.S.C. § 1119.").

"A request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words,

factual allegations showing wanton, willful or outrageous conduct." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020). Furthermore, under the Lanham Act, "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117. "Such sum in either of the above circumstances shall constitute compensation and *not a penalty*." *Id.* (emphasis added). Accordingly, punitive damages are unavailable under the Lanham Act for Worn Out's Counterclaim's First Claim, and the Court strikes its request from the Counterclaim.

Finally, given that Patagonia cites no caselaw to support its motion to strike Worn Out's request for pre- and post-judgment interest, the Court finds that Patagonia is "not prejudiced by the Court allowing [Worn Out's] request for pre-judgment interest to remain." *Zwyers v. Target Corp.*, No. 809-CV-868-T-33TBM, 2009 WL 5127975, at *2 (M.D. Fla. Dec. 18, 2009). Furthermore, "while [Worn Out] is not entitled to post-judgment interest at this time, because [it] has not obtained a judgment in [its] favor, the existence of [its] request for post-judgment interest causes no harm to [Patagonia]." *Id.* Accordingly, Worn Out's request for pre- and post-judgment interest will not be stricken.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Patagonia's Motion, **ECF No. [28]**, is **GRANTED IN PART AND DENIED IN PART**.

2. The Counterclaim's First Claim, **ECF No. [23]**, is **DISMISSED WITH LEAVE TO AMEND** consistent with this Order**.**

3. Worn Out shall file its First Amended Counterclaim **no later than May 15, 2023**.

Case No. 22-cv-23858-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 1, 2023.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record

26